UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SITTING IN HAMMOND, INDIANA

| | |
|---|---|
| D.W. bnf Thomas Williams and Janet Williams, J.W. bnf Thomas Williams and Janet Williams, M.W. bnf Thomas Williams and Janet Williams, O.W. bnf Thomas Williams and Janet Williams, Q.W bnf Thomas Williams and Janet Williams, Thomas Williams individually and as parent of D.W., J.W., M.W., O.W., Q.W.and Janet Williams individually and as parent of D.W., J.W., M.W., O.W., and Q.W.<br>　　　　　　Plaintiffs<br><br>Vs.<br>Indiana Department of Child Services, Jeffrey Tinich in his individual and Official capacity and Ellise Dumas in his official capacity as Director of Lake County Office of Indiana Department of Child Services<br>　　　　　　Defendants | CASE NO.: |

## COMPLAINT

Comes now Plaintiffs, D.W., J.W., M.W., O.W., Q., W., bnf Thomas Williams and Janet Williams, Thomas Williams and Janet Williams individually, and Thomas Williams and Janet Williams as parents of D.W., J.W., M.W., O.W. and Q.W. by counsel, Tracy A. Coleman, ROBERT L. LEWIS & ASSOCIATES, and for a cause of action against Defendants, the Indiana Department of Child Services, and Jeffrey Tinich in his individual and official capacity state and Ellis Dumas in his official capacity of Lake County Office of Indiana Department of Child Services as follows:

### JURISDICTION AND VENUE

1

1. This suit is brought under 42 U.S.C. 1983 seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States.

2. This suit is brought under Indiana state law claims for negligence, and intentional infliction of emotional distress.

3. That the actions were committed at 1027 Camelot, Portage, Porter County, Indiana (herein referred to as "foster home") between December 3, 2015 and December 25, 2015. Venue is proper in the Northern District of Indiana.

4. That Defendants were served properly with a Notice of Tort Claim pursuant to Indiana law.

5. That Defendants responded to the Notice of Tort Claim.

## PARTIES

6. That Plaintiff, D. W. is a citizen of the United States and a resident of the State of Indiana, and at all relevant times was a ward of the State of Indiana, the child of Thomas and Janet Williams and a resident of Porter, Indiana.

7. That Plaintiff, J. W. is a citizen of the United States and a resident of the State of Indiana, and at all relevant times was a ward of the State of Indiana, the child of Thomas and Janet Williams and a resident of Porter, Indiana.

8. That Plaintiff, M. W. is a citizen of the United States and a resident of the State of Indiana, and at all relevant times was a ward of the State of Indiana, the child of Thomas and Janet Williams and a resident of Porter, Indiana.

9. That Plaintiff, O.W. is a citizen of the United States and a resident of the State of Indiana, and at all relevant times was a ward of the State of Indiana, the child of Thomas and Janet Williams and a resident of Porter, Indiana.

10. That Plaintiff Q.W. is a citizen of the United States and a resident of the State of Indiana, and at all relevant times was a ward of the State of Indiana, the child of Thomas and Janet Williams and a resident of Porter, Indiana.

11. That Plaintiff, Janet Williams, is the mother of D.W., J.W., M.W., O.W., and Q.W. That Janet Williams is a citizen of the United States and a resident of the State of Indiana. At all times resident, Janet Williams was living in Lake County, Indiana.

12. That Plaintiff, Thomas Williams, is the father of D.W., J.W., M.W., O.W. and Q.W. That Thomas Williams is a citizen of the United States and the State of Indiana, and at all relevant times was living in Lake County, Indiana.

13. Defendant, Indiana Department of Child Services (DCS) is an Indiana state agency, which maintains its principal office at 302 West Washington Street, Room 306, Indianapolis, Indiana.

14. That Defendant, Jeffrey Tinich (herein referred to as Caseworker Tinich), is a case worker for DCS in Lake County, Indiana and at all relevant times was employed by the Lake County, Indiana division of the Indiana Department of Child Services (DCS). That at all times relevant, Jeffrey Tinich acted under the color of state law as an employee of the Indiana Department of Child Services (DCS). He is being sued for damages individually and in his official capacity.

15. That Defendant, Ellis Dumas, is the local director for Indiana Department of Child Services and at all relevant times was employed by the Indiana Department of Child Services. (DCS). That at all times relevant, Ellis Dumas acted under the color of state

law as an employee of the Indiana Department of Child Services (DCS). He is being sued for damages in her official capacity. That Ellis Dumas was responsible for supervising and training DCS employees. That Ellis Dumas failed to properly train and supervise DCS employees, including but not limited to Jeffrey Tinich.

## FACTS

16. That on or about December 3, 2015, the Indiana Department of Child Services (hereinafter "DCS") decided to remove five children, D.W., J.W., M.W., O.W., and Q.W. (herein referred to as "children") from the home of Janet Williams and Thomas Williams (herein referred to as parents) home. (That the children and parents shall be collectively called "family".)

17. That the children were placed in foster care to live with a foster parent at the address of 1027 Camelot, Portage, Porter County, Indiana (herein referred to as "foster home").

18. That the children were also placed in counseling at Crown Counseling Services in Crown Point, Indiana.

19. That DCS assigned Jeffrey Tinich as a caseworker for the children and at all times Caseworker Tinich was acting under color of law.

20. That Jeffery Tinich was assigned to D.W., J.W., M.W., O.W., Q.W., Janet Williams and Thomas Williams (herein referred to as family.)

21. That Caseworker Tinich was not properly trained and showed a reckless disregard for the family and engaged in outrageous conduct which endangered the health, welfare and safety of the children.

22. That with deliberate indifference, DCS provided Caseworker Tinich when they knew or should have known Caseworker Tinich would act so recklessly and outrageously that the lives of the children would be endangered and harmed.

23. That on or about December 3, 2015, the children were placed in counseling with Crown Counseling Services Inc. in Crown Point, Indiana.

24. That the children attended about two counseling sessions with Crown Counseling Services Inc.

25. That it is the practice and procedure of DCS that when children are in counseling, the foster parent shall make sure that children get to their counseling sessions.

26. That DCS allowed the son of the foster mother (herein referred to as "foster mother's son") to take the children to counseling.

27. That Caseworker Tinich was informed by Crown Counseling Services through a telephone message left by a Crown Counseling Services employee that it was concerned that an unidentified man dropped the children off at counseling and picked the children up from counseling.

28. That the unidentified man was later identified as the foster mother's son.

29. That it was the policy and custom of DCS to assign its caseworker a cell phone to be used as part of their duties so that individuals could contact the caseworker in regards to DCS issues, cases, etc.

30. That through the policy and custom, DCS assigned a cell phone to Jeffery Tinich.

31. That Jeffery Tinich and DCS had a policy, custom and practice where Caseworker Tinich would not answer the DCS assigned phone after hours and would turn off the phone when he was not at work.

32. That due to this this policy, custom and practice, Caseworker Tinich did not have to respond to emergencies and issues involving the children because if it did not occur during working hours, he would turn off his phone and not have to respond.

33. That Crown Counseling services was unable to talk to Jeffery Tinich directly regarding the foster mother's son transporting the children and had to leave several messages for Jeffery Tinich to express the neglect of the foster mother.

34. That Jeffery Tinich failed to report to the parents, Thomas and Janet Williams, that the foster mother's son had been alone with the children and had transported the children without authorization.

35. That the transportation of the children by the foster mother's son resulted in child abuse and/or neglect.

36. That Indiana is a mandatory reporting state when it comes to child abuse and/or neglect.

37. That Caseworker Tinich failed to report the child abuse and/or neglect when it was brought to his attention

38. That pursuant to I.C. 31-33-18-4, DCS had a duty to report to the parents the reports and information which it had received regarding the foster mother's son.

39. That DCS's failure to report the neglect by the foster mother and the care and custody of the children by the foster mother's son, prevented Thomas and Janet Williams from being informed so that they could help their children.

40. That DCS's conduct in permitting the foster mother's son to have a role in the care and custody of the children, and DCS's failure to inform Thomas and Janet Williams of the foster mother's son providing care for their children was extremely reckless, outrageous and dangerous conduct.

41. That DCS had a statutory duty and a duty of reasonable care to inform Thomas and Janet Williams of all reports of neglect and abuse it received regarding their children.

42. That DCS had received a report from Crown Counseling Services Inc. regarding the neglect of the foster mother and the foster mother having an unidentified male transporting the children.

43. That Crown Counseling Services Inc. expressed concern about the foster mother's son and DCS failed to inform Thomas and Janet Williams of concerns that were raised about the foster mother's son between December 3, 2015 to December 22, 2015.

44. That the failure of DCS to provide a properly trained caseworker with whom the family and Crown Counseling Services could contact and who would respond at all hours was willful, wanton and reckless and the failure to provide this trained individual resulted in damages sustained by the entire family.

45. That Crown Counseling Services Inc. through its employee made numerous attempts to speak to Caseworker Tinich regarding its concerns.

46. That Caseworker Tinich retaliated against Crown Counseling Services. Inc. and had them removed from the case.

47. That the conduct of Caseworker Tinich was reckless, careless and outrageous.

48. That by DCS and Caseworker Tinich failing to address the concerns of Crown Counseling Services Inc. immediately resulted in a dangerous condition for the children.

49. That Caseworker Tinich showed a reckless disregard and contempt for the concerns of Crown Counseling Services Inc. and for the safety and welfare of the children.

50. That Caseworker Tinich acted under color of law to remove the children from Crown Counseling Services and under of color of law of not informing the parents, Thomas and Janet Williams of the allegations of neglect and/or child abuse.

7

51. That in addition to being notified by Crown Counseling Services Inc. of abuse and neglect, DCS also was notified that J.W. was injured and had to go to the hospital on December 11, 2015.

52. That DCS had information regarding J.W. going to the hospital on or about December 11, 2015 and failed to report said abuse and/or neglect failed to the parents, Thomas and Janet Williams.

53. That according to a probable cause affidavit signed by Detective Janis Regis of the Portage Police Department, J.W. was first raped on December 11, 2015 by the foster mother's son.

54. That DCS and Caseworker Tinich did nothing to inform Thomas and Janet Williams of the hospital visit of J.W. on December 11, 2015.

55. That if Thomas and Janet Williams knew that J.W. had to go to the hospital on December 11, 2015, and that there was abuse and/or neglect, Thomas and Janet Williams could have intervened to prevent further abuse and neglect from happening to J.W. and gotten her the care and support she needed.

56. That DCS and Caseworker Tinich had a duty pursuant to I.C. 31-33-18-4 to notify Thomas and Janet Williams verbally and in writing of the abuse and/or neglect that J.W. experienced on December 11, 2015.

57. That in addition to having a statutory duty to inform Thomas and Janet Williams of the hospital visit of J.W. on December 11, 2015, Defendants had a duty to exercise reasonable care and keep the parents inform regarding their children.

58. That Defendants failed to follow its statutory duty and/or exercise reasonable care of keeping the parents informed in the upbringing of their child.

8

59. That on or about December 25, 2015, DCS made a report to the Portage Police Department regarding the sexual abuse and assault of J.W. by the foster mother's son.

60. That J.W. had vaginal itching and burning which DCS had to investigate.

61. That on or between December 11, 2015 and December 22, 2015, J.W. was repeatedly sexually assaulted and raped by the foster mother's son.

62. Additionally, D.W., M.W., O.W., and Q.W. were also verbally assaulted, emotionally abused and/or physically harmed.

63. That the foster mother's son raped and abused J.W. in the presence of the other children, D.W., M.W., O.W. and Q.W. and prevented the siblings of J.W. from helping J.W.

64. That, as a result, of DCS's failure to keep the parents informed and/or properly report abuse and/or neglect as required by law and as required by the use of reasonable care, the five children suffered multiple physical, psychological, sexual and emotional injuries that they will have to live with and learn to overcome for the rest of their lives.

65. That Caseworker Tinich and DCS received notice of the abuse and/or neglect and acted recklessly and outrageously by failing to report the abuse and/or neglect and failing to inform the parents of the hurt, sexual abuse, psychological trauma and injuries being inflicted upon their children.

66. That due to defendants' actions, and failure to report the abuse and/or neglect and failure to notify the parents of the abuse and injuries, the five children suffer from severe emotional distress and physical injuries as a result of the neglect and/or abuse.

67. That the five children were threatened, yelled at and emotionally and/or sexually assaulted at the foster home and defendants failed to immediately act and inform the parents and/or report the abuse.

68. That Jefferey Tinich, the case worker, by his extreme and outrageous conduct, intentionally or recklessly caused severe emotional, mental and physical distress and/or injuries to the children and the parents.

69. That the conduct of Jeffery Tinich and DCS is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, that it should be regarded as atrocious, and utterly intolerable in a civilized community.

70. That DCS allowed the five children to stay in an unhealthy and abusive environment, when it was given notice of the abuse and/or neglect and failed to notify the parents and report the abuse.

71. As a result of the negligence of defendants, J.W. is now a very unstable teenager, who battles with suicidal thoughts and tendencies.

72. That after the rape and abuse, J.W. has been unable to return home due to the need for 24 hour medical and psychiatric care.

73. As a result of the negligence of DCS, the five children suffer from emotional and/or physical damage due to the trauma they endured.

74. That the Indiana Code mandates, in relevant part, that "whenever a child abuse or neglect assessment is conducted under this article, the department shall give verbal and written notice to each parent, guardian, or custodian of the child that the reports and information described relating to the child abuse or neglect assessment." Ind. Code 31-33-18-4.

75. That DCS and Jeffrey Tinich did not provide a verbal and written notice to Thomas and Janet Williams pursuant to Indiana Code 31-33-18-4 of the abuse and/or neglect regarding their children.

76. That if Defendants had provided reported the abuse and/or neglect to the parents, Thomas and Janet Williams could have intervened and minimized the physical, sexual and emotional abuse being inflicted upon JW and her four siblings.

77. That DCS' failure to intervene and provide proper notice to Janet Williams and Thomas Williams of the reports made by Crown Counseling Services, Inc., the hospital visit, injuries and/or sexual abuse of their children resulted in the deprivation of the family's protected liberty and property interests, under 42 U.S. C. § 1983.

78. That DCS's failure to properly train its employees resulted in the deprivation of the family's protected liberty and property interests, under 42 U.S.C. § 1983.

79. That DCS's custom and policy of allowing Caseworker to ignore and not answer phone calls, and allowing them to not report abuse and neglect, resulted in a deliberate indifference which resulted in a violation of the family's protected liberty and property interests, under 42 U.S.C. § 1983.

## COUNT I – NEGLIGENCE PER SE

**80.** That Plaintiffs incorporate paragraphs 1-79 by reference, inclusive as though set forth herein at length.

81. That pursuant to Indiana Code § 31-33-18-4, DCS had a duty to inform the parents in writing and verbally of all abuse and neglect.

82. That DCS failed to report and inform Thomas Williams and Janet Williams of the abuse being inflicted upon their children.

83. That DCS failed to inform and report to Thomas Williams and Janet Williams when the foster mother's neglected their children and placed the children in the care and custody of the foster mother's son.

84. That DCS failed to inform and report to Thomas Williams and Janet Williams when J.W. was taken to the hospital on December 11, 2015 for injuries she sustained while in the foster home.

85. That December 11, 2015 was the first date J.W. was raped.

86. That as a result of DCS's failure to report abuse and/or neglect to the parents regarding the hospital visit of J.W. on December 11, 2015, Thomas Williams and Janet Williams could not act to properly help J.W. or her siblings.

87. That as a result of DCS's failure to inform the parents, the children sustained repeated abuse.

88. That the parents will continue to suffer and have damages to assist their children to overcome the emotional, sexual and physical abuse which they endured.

89. That as a result of being raped and sexually assaulted, J.W. has been unable to return to the full care and custody of her parents due to needing special medical and psychiatric attention 24 hours a day.

90. That DCS and Caseworker Tinich breached its duty by failing to report abuse as required by statute.

91. That the conduct of DCS and Caseworker Tinich in not reporting the abuse and/or neglect to the parents that J.W. was taken to the hospital on December 11, 2015, is such reckless, outrageous and extreme conduct that DCS and Caseworker Tinich should be found negligent.

92. That J.W. was repeatedly raped between December 11, 2015 to on or about December 22, 2015.

93. That the failure of DCS and Caseworker Tinich to report the abuse and/or neglect to Thomas and Janet Williams allowed the children to remain in a physically, emotionally and sexually abusive environment.

**WHEREFORE**, Thomas Williams, Janet Williams, D.W., J.W., M.W., O.W. and Q.W. request that the Court enter judgment against Defendants, DCS, Jeffrey Tinich in his individual and official capacity, award Plaintiffs compensatory damages, future damages, damages for pain and suffering, damages for rehabilitative maintenance, attorney fees and all other just and proper relief. Plaintiffs also request punitive damages against Jeffrey Tinich in his individual capacity.

### COUNT II – NEGLIGENCE – REASONABLE CARE – DCS AND JEFFREY TINICH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

94. That Plaintiffs incorporate paragraphs 1-93 by reference, inclusive as though set forth herein at length.

95. That DCS and Jeffrey Tinich in his individual and official capacity had a duty to exercise reasonable care.

96. That Defendants failed to exercise reasonable care when they failed to inform the parents of the abuse and neglect concerns which was reported to DCS from Crown Counseling services Inc. and when they received notice of the December 11, 2015 hospital visit of J.W.

97. That DCS allowed its Caseworker to turn off his phone during non-work hours and to not respond to issues of the health, safety and welfare of the children which occurred during non-business hours.

98. That Defendants were negligent in not exercising reasonable care in informing Thomas and Janet Williams of the abuse and neglect being inflicted upon their children.

99. That J.W. was raped and abused between December 11, 2015 and December 22, 2015.

100. That J.W. had a hospital visit on December 11, 2015.

101. That Defendants had information regarding the abuse and the unauthorize contact of the foster parent's son with the children and failed to do anything to inform the parents.

102. That DCS received notice from Crown Counseling Service Inc. regarding its concerns with the foster parent's son's contact with the children and failed to act on this information and/or notify the parents, Thomas and Janet Williams.

103. That J.W. was raped between 4-5 times, forced to engage in oral and anal sex and will have permanent physical and psychological damage.

104. That J.W.'s knee was injured on December 11, 2015 and she will have continued physical pain and suffering from the knee injury.

105. That the siblings of J.W. was forced to witness the abuse, were verbally and/or physically assaulted by the foster parent's son.

106. That DCS failed to exercise reasonable care in notifying Thomas and Janet Williams of the abuse and/or neglect of their children which occurred between December 3, 2015 to December 25, 2015.

107. That Defendants had a duty to act with reasonable care and breached their duty of reasonable care by failing to notify the parents of the abuse and/or neglect that their children endured while in the care and custody of the State of Indiana.

108. As a result of Defendants' breach of their duties of care, the children have suffered physical and psychological damage which will endure for the rest of their lives, J.W. has been unable to return to the loving and supportive environment of her parents due to post traumatic stress and other physical and psychological injuries and trauma she

has endured as a result of being repeatedly raped and sexually abused, the parents will have continued damages as they provide for the care and custody of their children who have been permanently physically and psychologically harmed.

**WHEREFORE**, Plaintiffs, Thomas Williams, Janet Williams, D.W., J.W., M.W., O.W. and Q.W. request that the Court enter judgment against Defendants, DCS, Jeffrey Tinich in his individual and official capacity, award plaintiffs compensatory damages, future damages, damages for pain and suffering, damages for rehabilitative maintenance, attorney fees and all other just and proper relief. Plaintiffs also request punitive damages against Jeffrey Tinich in his individual capacity.

### COUNT III ABUSE OF PROCESS AND/OR OFFICIAL MISCONDUCT

109. That Plaintiffs incorporate paragraphs 1-108 by reference, inclusive as though set forth herein at length.

110. That Caseworker Tinich retaliated when Crown Counseling Services Inc. continued to call him and request that he take action on their concerns regarding the children.

111. That Caseworker Tinich was acting under color of state law when as a caseworker, he advocated to have the children removed from Crown Counseling Services Inc.

112. That Caseworker Tinich's removal of the children from Crown Counseling Services Inc. was knowingly, willful, outrageous and extreme conduct which arose when Caseworker Tinich did not want to address the concerns of Crown Counseling Services Inc.

113. That Caseworker Tinich's conduct resulted in an abuse of process which ultimately delayed the children being removed from the abusive foster home.

114. That the conduct of Caseworker Tinich was so reckless, and extreme that judgment should be entered against all Defendants.

**WHEREFORE**, Plaintiffs, Thomas Williams, Janet Williams, D.W., J.W., M.W., O.W. and Q.W. request that the Court enter judgment against Defendants, DCS, Jeffrey Tinich in his individual and official capacity, award plaintiffs compensatory damages, future damages, damages for pain and suffering, damages for rehabilitative maintenance, attorney fees and all other just and proper relief. Plaintiffs also request punitive damages against Jeffrey Tinich in his individual capacity.

### COUNT IV – 1983 FAILURE TO TRAIN AND FAILURE TO SUPERVISE

115. That Plaintiffs incorporate paragraphs 1-114.

116. That Jeffrey Tinich was employed by the Department of Child Services.

117. That Ellis Dumas was the supervisor for Jeffrey Tinich and the supervisor for the Lake County Division of DCS.

118. That the Department of Child Services and/or Ellis Dumas was responsible for training and supervising Tinich.

119. That at all times relevant, Caseworker Tinich was acting under color of state law.

120. That DCS provided Tinich with a government issued cell phone for work.

121. That Caseworker Tinich was not trained to take calls during non-office hours.

122. That Tinich would not answer the phone call for children and parents who were in need if the phone call came after hours.

123. That Tinich when he received the information of abuse did not inform the parents, Janet Williams and Thomas Williams in writing or verbally.

124. That DCS's failure to train and/or supervise Caseworker Tinich on how to take calls and how to address calls resulted in deliberate indifference.

125. That Caseworker Tinich should have been trained and/or supervised regarding taking calls involving the safety, welfare and care of children during business hours and non-business hours.

126. That DCS's failure to provide training to its employees reflected deliberate indifference to the Plaintiffs who came into contact with DCS employees.

127. That DCS had a duty to supervise Tinich and to make sure that he was acting properly.

128. That DCS's failure to supervise Tinich resulted in deliberate indifference and allowed Tinich to act recklessly, wantonly, knowingly in the case of Plaintiffs which was assigned to Tinich.

129. That the children had a right to equal protection and due process pursuant to the Fourteenth Amendment.

130. That Plaintiffs had a federally protected right to due process. That if any abuse or neglect occurred to the children the plaintiffs had a right to be notified.

131. That inadequate training caused Defendants not to provide due process to Plaintiffs and inform plaintiffs of the abuse.

*132.* That because Defendant, Tinich was not properly trained and/or supervised and failed to notify parents of neglect and/or abuse, the children were allowed to remain in a foster home where J.W. was repeatedly raped and sexually assaulted and the other children were emotionally and/or physically harmed.

133. That the failure to train Tinich resulted in deliberate indifference to the rights of the plaintiff because Tinich had contact with the plaintiffs.

134. A reasonable individual would have known that if people are calling you after hours regarding emergency issues involving children, a case worker should answer his or her phone and respond to help.

135. A reasonable person would know that if children are in a foster home and are being injured, that the parents must be notified orally and in writing.

**WHEREFORE**, Plaintiffs, Thomas Williams, Janet Williams, D.W., J.W., M.W., O.W. and Q.W. request that the Court enter judgment against Defendants, DCS, Jeffrey Tinich in his individual and official capacity, award plaintiffs compensatory damages, future damages, damages for pain and suffering, damages for rehabilitative maintenance, attorney fees and all other just and proper relief. Plaintiffs also request punitive damages against Jeffrey Tinich in his individual capacity.

### COUNT V – 1983 – DUE PROCESS AND EQUAL PROTECTION

136. That Plaintiffs incorporate paragraphs 1- 135.

137. That the parents, Janet and Thomas Williams had a pursuant to the due process clause of the Fourteenth Amendment had a liberty interest in the rearing and education of their children.

138. That the parents, Janet and Thomas Williams had a liberty interest in keeping their children safe.

139. That Casework Tinich, while acting under color of state law, statute, ordinance, regulation, custom or usage, caused Thomas and Janet Williams, to be deprived of their liberty interest in the upbringing and education of their children by failing to notify them of the neglect and/or abuse their children were receiving.

140. That DCS deprived the parents of the right to participate in the upbringing of their children when they failed to inform them that their children were in the care and custody of the foster parents' son and were being abused and neglected.

141. That if Thomas and Janet Williams had known that the foster parent's son was taking care of their children, and being left alone with them, the parents Thomas and Janet Williams would have been able to voice their concerns and stop the contact of the foster parent's son with their children.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

142. That Defendants incorporate paragraphs 1 – 141.

143. That DCS failed to notify the parents of the harm being inflicted upon their children,

144. That DCS acted with gross negligence and outrageous and extreme conduct.

145. That Defendants knew or should have known that the failure to exercise due care in informing the parents of the alleged neglect and abuse would cause plaintiff's severe emotional distress.

146. That the failure to notify the parents of the allegations of Crown Counseling Inc. and the hospital visit of December 11, 2015, resulted in a breach of duty and breach of exercising reasonable care.

147. As a proximate result of Defendant's failure to notify the parents of the allegations of neglect and/or abuse, the plaintiffs suffered severe emotional distress and mental suffering and will continue to suffer.

148. That plaintiff will continue to have loss wages, diminished earning capacity and other damages as a results of Defendants' failure.

149. That Plaintiffs request damages for medical and related expenses, lost wages, for cost of the suit herein, attorney fees, and all other damages.

**WHEREFORE**, Plaintiffs, Thomas Williams, Janet Williams, D.W., J.W., M.W., O.W. and Q.W. request that the Court enter judgment against Defendants, DCS, Jeffrey Tinich in his individual and official capacity, award plaintiffs compensatory damages, future damages, damages for pain and suffering, damages for rehabilitative maintenance, attorney fees and all other just and proper relief. Plaintiffs also request punitive damages against Jeffrey Tinich in his individual capacity.

By: /S/ Tracy A. Coleman
Tracy A. Coleman, #19733-45
ROBERT L. LEWIS & ASSOCIATES
Counsel for Plaintiffs
2148 West 11th Avenue
Gary, Indiana 46404
219-944-2755 Tel.
219-944-2764 Fax.

Plaintiffs demand trial by jury.          /s/ Tracy A. Coleman